**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| L.S. AND JULIA V., Individually and as Parent of L.S., )<br>)<br>) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 14-cv-10052 |
| ) | |
| BOARD OF EDUCATION OF LANSING SCHOOL DISTRICT 158; CECILIA HEIBERGER, in her Official Capacity as Superintendent; ILLINOIS STATE BOARD OF EDUCATION, )<br>)<br>)<br>)<br>) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

This action is an appeal from an administrative ruling rendered by an Impartial Hearing Officer ("IHO") on August 18, 2014, following a special education due process hearing pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 *et seq*. The IHO conducted the due process hearing in order to determine whether Plaintiff L.S. should be allowed to remain a student at Memorial Junior High School ("Memorial") in Lansing School District #158 ("District"). Plaintiffs seek to supplement the administrative record with additional evidence, including: (1) evidence allegedly improperly excluded by the IHO; (2) evidence allegedly unavailable at the time of the due process hearing; and (3) evidence pertaining to L.S.'s academic, medical and social-emotional development since the due process hearing.

# BACKGROUND

## I. The Underlying Dispute

Plaintiff L.S. is a twelve-year-old diagnosed with type-1-diabetes, a mood disorder, attention deficit hyperactive disorder, and learning disabilities, qualifying him as a "child with a disability" pursuant to the IDEA. (*See* R.47, Pltfs' Motion to Suppl. the Admin. Rec., ¶ 3; AR1474-78;[1] R.1, Complt., ¶¶ 2, 8.) L.S. has attended various District schools since preschool and has received specialized instruction and related services through an Individualized Education Program ("IEP") at each school.[2] (R.1, ¶ 13.) Over time, Plaintiffs allege that the District has increasingly segregated L.S. into separate classroom settings without providing needed behavioral and academic supports and services. (*See* R.1, ¶¶ 3, 14-32.) Pertinent to the matter before the Court, in October of 2013, the District sought to move L.S. from Memorial, his neighborhood school, into a segregated school for students with behavioral disabilities named Providing Alternatives for Continuing Education ("PACE"). (*See* R.47, ¶ 5; AR1272-74.) Plaintiffs contend that the District's actions violate the IDEA's mandate to educate students in their least restrictive environment ("LRE"), which requires the starting point for educational placement to be the neighborhood school with appropriate supports and services. (R.1, ¶ 3.) Plaintiffs further contend that the District has violated the IDEA and failed to provide L.S. with an appropriate education to meet his unique needs by not conducting appropriate evaluations, not developing appropriate IEPs, and not implementing the IEPs once created. (*Id.*) L.S.'s mother,

---

[1] "AR" refers to the Administrative Record from the due process hearing conducted in June 2014 that is relevant to this appeal. (*See* R.32-34, 36-43, 45.)

[2] Plaintiffs allege that in 2009, the District took away Plaintiff L.S.'s IEP and he received no special education, speech-language services, and social work services for two years. (*See* R.1, Complt., ¶ 15.)

*pro se*, requested a due process hearing which invoked the "stay put" provision of the IDEA for L.S. to remain at Memorial. (*Id.*, ¶ 44.)

## II.    The Hearing, Appeal & Preliminary Injunction

On October 16, 2013, L.S.'s mother requested an administrative hearing. (AR7.) The IHO convened a due process hearing on June 9, 10, 11, and July 14, 2014. (R.47, ¶ 9; AR794.) On August 18, 2014, the IHO issued a decision in favor of the District—finding PACE to be L.S.'s least restrictive environment and appropriate placement. (AR794-823.) The following day, a District administrator contacted L.S.'s mother regarding L.S.'s attendance at PACE and was notified that L.S.'s mother was seeking review of the IHO's decision and that L.S. would not be attending PACE the following day. L.S.'s mother then made attempts to enroll L.S. at Memorial under the stay-put provision of the IDEA which guarantees that students and their parents "be able to rely on an uninterrupted education during a contest between the school board and the parents." *Bd. of Educ. of Community High School Dist. No. 218 v. Ill. State Bd. of Educ.*, 130 F.3d 545, 548 (7th Cir. 1996); *see also* 20 U.S.C. § 1415(j). On December 15, 2014, Plaintiffs filed their appeal in this District. (*See* R.1.) On January 23, 2015, Plaintiffs were granted a temporary restraining order and preliminary injunction against implementation of the IHO's decision and Defendants were "ordered to allow L.S. to return to Memorial, where he was a sixth-grade student during the 2013-14 school year, and to receive educational services in accordance with the 'stay-put' instructional placement agreed upon during that school year." (R.21.)

Plaintiffs move to supplement the administrative record with evidence they allege was either improperly excluded at the hearing or unavailable at the time of the hearing, and with evidence of L.S.'s academic, medical, and social-emotional development since the time of the

hearing.  Specifically, Plaintiffs seek to supplement the administrative record with the following

evidence:

1) Testimony from Spencer White, L.S.'s primary special education teacher
   during the 2013-14 school year limited to the issues of the District's failure to
   provide instruction using peer reviewed instructional methods, failure to
   appropriately assess L.S.'s academic and behavioral deficits, and failure to
   implement L.S.'s IEP by measuring his progress on his goals and providing
   the agreed-upon behavior interventions;

2) Documentation and expert testimony from Dr. Karin Madsen regarding L.S.'s
   appropriate educational placement, necessary behavior interventions and his
   behavior, including any testimony necessary to lay the foundation for her
   expert opinions;

3) Expert testimony documentation from an independent expert, such as Dr.
   Michael McCanna, limited to PACE's ability to provide L.S. with a free and
   appropriate public education and implement his IEP;

4) L.S.'s current IEP completed on March 17, 2015, including Plaintiffs' Letter
   of Dissent, which details his current level of functioning and the District's
   proposal to provide L.S. with a free appropriate public education;

5) L.S.'s current grades, IEP progress reports, behavior reports, Check-in,
   Check-Out logs, Behavior Intervention Plan data, and other school student
   records which detail L.S.'s current level of academic and behavioral
   functioning, goals, and progress;

6) Testimony from Megan Mirich, L.S.'s current primary special education
   teacher who participated in developing L.S.'s current IEP, Lisa Newton,
   L.S.'s current and former general education teacher who participated in
   developing L.S.'s current IEP, and L.S.'s current one-on-one aide; and

7) Documentation, including a summary report, and expert testimony from Dr.
   Madsen limited to L.S.'s social-emotional development since the due process
   hearing.

(R.47, ¶ 46.)  Plaintiffs request the Court order the parties to submit initial disclosures and

conduct discovery—limited to the areas identified above—in accordance with Federal Rules of

Civil Procedure 26(a)-(b), and permit an evidentiary hearing, similarly limited.  (R.47.)

# LEGAL STANDARD

Under 20 U.S.C. § 1415(i)(2), any party aggrieved by the findings and decision made pursuant to an IDEA due process hearing may bring a federal action challenging the decision. In adjudicating such a claim, a district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C); *see also Bd. of Educ. of Tp. High Sch. Dist. No. 211 v. Ross*, 486 F.3d 267, 270 (7th Cir. 2007); *Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 901 (7th Cir. 1996). "Once the record is complete, the court is to base its decision on 'the preponderance of the evidence' and to grant 'such relief as [it] determines is appropriate.'" *Ross*, 486 F.3d at 270. The district court is "to make an independent decision based on the preponderance of the evidence," while at the same time, giving "'due weight' to the determinations made during the state administrative process." *Ross*, 486 F.2d at 270 (citing *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)). A district court's review based on the preponderance of the evidence "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Ross*, 486 F.3d at 270 (*citing Rowley*, 458 U.S. at 206); *see also Patricia P. v. Bd. of Educ. of Oak Park,* 203 F.3d 462, 466 (7th Cir. 2000) (explaining the district court's independent determination as to whether the requirements of the IDEA are satisfied does not mean that state administrative findings are conclusive if supported by substantial evidence, but "because courts do not have special expertise in the area of educational policy, they must give 'due weight' to the results of the administrative decisions").

While the district court "must take as the basis of its decision the administrative record that the independent hearing officer compiled; it then has the discretion to admit additional evidence to supplement the record." *Ross*, 486 F.3d at 270 (7th Cir. 2007) (citing 20 U.S.C. § 1415(i)(2)(C)); *see also Monticello*, 102 F.3d at 901 (explaining that the "district court is not required to allow all evidence proffered by a plaintiff in an IDEA proceeding"). Indeed, district courts are advised not to receive additional evidence beyond the administrative record absent a strong justification for the failure to present such evidence at the administrative level. *Monticello*, 102 F.3d at 901-902. The First Circuit's decision in *Burlington*, cited approvingly by the Seventh Circuit in *Monticello*, recognized that "the source of the evidence" before the trial court "generally will be the administrative hearing record, with some supplementation at trial." *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 790 (1st Cir. 1984); *see Monticello*, 102 F.3d at 901. The *Burlington* Court stated:

> [T]he reasons for supplementation will vary; they might include gaps in the administrative transcript owing to a mechanical failure, unavailability of a witness, an improper exclusion of evidence concerning relevant events occurring subsequent to the administrative hearing. The starting point for determining what additional evidence should be received, however, is the record of the administrative proceeding.

*Burlington*, 736 F.2d at 790. "Ultimately, the discretion is left to the trial court to determine whether to allow evidence beyond the administrative record, so long as the evidence would not change the character of the hearing from one of review to a trial *de novo*." *Patricia P.*, 203 F.3d at 470; *Monticello*, 102 F.3d at 901 (quoting *Burlington.*, 736 F.2d at 791).

## ANALYSIS

Plaintiffs seek to supplement the administrative record with additional evidence limited to three topics: (1) evidence allegedly improperly excluded by the IHO; (2) evidence allegedly unavailable at the time of the due process hearing; and (3) evidence pertaining to L.S.'s

academic, medical and social-emotional development since the due process hearing. Specifically, Plaintiffs seek to supplement the administrative record with: (1) testimony from Spencer White and Dr. Karin Madsen that the IHO allegedly improperly excluded; (2) independent evidence about PACE's ability to provide L.S. with an appropriate education from an independent expert, such as Dr. McCanna, an impartial clinical psychologist whom the District previously hired to evaluate L.S.; and (3) various evidence regarding L.S.'s post-hearing educational records, including academic, medical and social-emotional development. (R.47, ¶¶ 22, 32, 45, 46.)

## I.  The IHO Did Not Improperly Exclude Evidence

As to their first request, Plaintiffs argue that the IHO excluded relevant testimony that was central to the Plaintiffs' case by providing arbitrary time limits for witness examination and preventing Plaintiffs' presentation of their case in its entirety. Plaintiffs specifically refer to the testimony of two witnesses: Spencer White—L.S's primary special education teacher, and Dr. Karin Madsen—Plaintiffs' clinical psychologist expert.

### A.  The IHO Did Not Improperly Exclude Mr. White's Testimony

Plaintiffs argue that the IHO prevented Mr. White from providing testimony regarding Defendants' alleged failure to provide instruction using peer reviewed instructional methods, to appropriately assess L.S.'s academic and behavioral deficits, and to implement L.S.'s IEP by measuring his progress on his goals and providing the agreed-upon behavior interventions. Plaintiffs allege the IHO's imposition of time limits—contrary to the law and over the objection of counsel—resulted in improper exclusion of Mr. White's testimony. Defendants respond that the IHO provided the amount of time requested by Plaintiffs and any failure to elicit testimony on specified topics was due to Plaintiffs' repetitive examinations.

The Illinois School Code states that "reasonable efforts" must be made by the parties to present their respective cases within seven cumulative days at the hearing. 105 ILCS 5/14-8.02a(g-55). The subsection further states that "this subsection (g-55) shall not be applied in a manner that (i) denies any party to the hearing a fair and reasonable allocation of time and opportunity to present its case in its entirety …" *Id.* The Illinois Administrative Code specifies the "Powers and Duties of Hearing Officer" with respect to the hearing as including, but not limited to the power to administer oaths, examine witnesses, authorize issuance of subpoenas, rule on admissibility of evidence, order independent evaluations, grant specific extensions of time, read stipulations of fact into the record and render decisions and issue orders and clarifications. *See* 23 Ill. Admin. Code § 226.660; 105 ILSC 5/14-8.02a.

Here, the IHO initially offered three days for the hearing and the parties agreed to those dates. (*See* AR442, 452.) On March 12, 2014, the IHO issued an Order recounting the conference call with the parties, which stated:

> Parents' attorneys indicated that because they were taking over the case from another attorney they would like to discuss in the pre hearing the possibility of having additional hearing dates. The Hearing Officer indicated they could raise this matter but emphasized that the attorneys should focus on having witness testify only as to relevant matters and focus on exactly what they want the witness to testify to in relation to proving their case, rather than on extending the length of the hearing.

(AR443.) On April 22, 2014, Plaintiffs' attorneys submitted the "Parent's Prehearing Conference Disclosure Statement" which requested "4 days for the hearing." (AR456.) In addition, Plaintiffs edited their list of issues and relief sought for the hearing and sent it to the District beforehand, as ordered by the IHO. (*See* AR499-501.) Plaintiffs' counsel stated:

> In complying with [the IHO's] orders, as well as her encouragement of settlement, we have removed several of our claims and their respective remedies. We believe that the following list will help to focus the hearing and reduce its duration.

(AR499.)  Plaintiffs submitted second and third prehearing disclosure statements which both

maintained the request for a four-day hearing.  (*See* AR514, 541.)  The IHO ultimately granted

Plaintiffs' request and conducted a four day hearing, which occurred on June 9, 10, 11 and July

14, 2014.  (*See* AR3384, 3739, 4165, 4489.)

The administrative record does not support Plaintiffs' assertion of unfair time limitations

on the hearing.  Plaintiffs cite to the administrative record in support of their argument that the

"IHO limited witness testimony to four days despite the objections of L.S.'s mother that this

would not permit her enough time to present her case."  (*See* R.48, at 8 (*citing* AR627).)  This

citation, however, fails to support Plaintiffs' argument.  Instead, it refers to the IHO's July 16,

2014 Order granting a motion for continuance of the hearing to include the date upon which

closing briefs were to be filed.  (*See* AR626-27.)  The Order makes no mention of an objection

from Plaintiffs regarding extending the length of the four day hearing that had—by that time—

been completed.  (*See id.*)  The administrative record does contain an email from Plaintiffs'

counsel to the IHO on June 5, 2014 expressing concern that the parties "will not complete the

hearing within three days" and further states "[t]he Parent still believes that a minimum of four

days are necessary for the hearing."  (AR604.)  The IHO responded reiterating the need for the

parties to "continue working to ensure the witnesses' testimony is on essential matters, avoiding

unduly repetitive or unnecessary testimony."  (AR606.)  The IHO noted that the witness lists for

both sides contained witnesses testifying to the same matters and suggested that affidavits be

submitted for some of the witnesses.  (*Id.*)  Ultimately, the IHO ended up extending the hearing

to a fourth day—the same time frame as requested by Plaintiffs.  (*See* AR4489.)

Plaintiffs also refer to the IHO's request to counsel to "move forward" and shorten his

direct examination, (AR3502) and to "limit it" on redirect (AR3532) as alleged evidence of the

IHO's improper time limitations.  The transcript, however, does not reveal any such limitations

on Mr. White's testimony:

> [Defendants' Counsel]:  It's already eleven o'clock and this witness is only scheduled to go to 11:35.  It's also a witness of the District, and I am sure I have more questions than 35 minutes' worth, and if we continue to go it will be less than 35 minutes.
>
> [IHO]:  How much more do you have?
>
> [Plaintiffs' counsel]:  I will shorten my direct and I will take five more minutes, if that will be okay.
>
> [IHO]:   So let's move forward.  Go ahead, you were going to rephrase your question.
>
> [Plaintiffs' counsel]:  Sure.

(AR3501-02.)

> [Plaintiffs' counsel]:  I have some redirect.
>
> [IHO]:  Okay.  Let's limit it.  I think we have another witness waiting, so please keep that in mind.
>
> [Plaintiffs' counsel]:  Sure.
>
> [IHO]:  Thank you.

(AR3532.)  Indeed, the transcript citations upon which Plaintiffs rely do not indicate that the

IHO placed arbitrary time limitations on Mr. White's testimony.  Nor do they indicate that

Plaintiffs objected to the IHO's efforts to keep things moving forward or informed the IHO that

they needed additional time to elicit relevant evidence for the proceedings.  Instead, it was

Plaintiffs' counsel who offered to shorten his direct examination of the witness.  Although

Plaintiffs contend that any gaps in the administrative record of Mr. White's prior testimony were

due to time constraints, the administrative record as the "starting point for determining what

additional evidence should be received" does not support their position.  *See Burlington*, 736

F.2d at 790 (explaining that "[t]he starting point for determining what additional evidence should be received, however, is the record of the administrative proceeding").  Moreover, IHOs, like judges, have the inherent authority to manage hearings to avoid needless waste and delay.  They should exercise control where necessary to manage the proceedings and eliminate unnecessary costs and redundancy, including imposing reasonable time limits where appropriate.

Furthermore, supplementing the record with additional testimony from Mr. White would be cumulative, repetitive, and duplicative as Plaintiffs move to supplement with testimony that Mr. White already covered at the hearing.  Specifically, Mr. White testified regarding L.S.'s academic and behavioral deficits when he spoke of L.S.'s grades and L.S.'s skills and ability to understand.  (*See* AR3467-87.)  He also testified regarding L.S.'s academic performance based on his IEP progress reports (AR3472, 3477), STAR progress monitoring reports (AR3473), and a comparison of L.S.'s psychological testing to his classroom performance (AR3491).  Any absence of testimony from Mr. White regarding peer-reviewed instruction is due to the fact that Plaintiffs failed to ask any questions regarding this issue at the due process hearing.  Furthermore, it was not identified as an issue for the due process hearing.  (AR795-96.)  Accordingly, the Court denies Plaintiffs' request to supplement the administrative record with testimony from Mr. White.  *See Burlington*, 736 F.2d at 790 (interpreting "additional evidence" in 20 U.S.C. § 1415 to "not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony; this would be entirely inconsistent with the usual meaning of 'additional'"); *id.* at 791 (explaining that an administrative hearing witness is rebuttably presumed to be foreclosed from testifying at trial and a court should "weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, … and the conservation of judicial resources").

**B.** **The IHO Did Not Improperly Exclude Dr. Madsen's Testimony Regarding Her Opinion of L.S.'s Placement**

Plaintiffs argue that the IHO barred Dr. Madsen from providing expert opinions regarding L.S.'s appropriate placement and the behavior interventions necessary for him to receive the Free Appropriate Public Education ("FAPE") required by the IDEA, including testimony regarding her qualifications as an expert to render these opinions. Defendants argue that the IHO permitted Dr. Madsen to testify regarding the issues to which she was qualified to testify and which were not cumulative of other testimony.

The parties' dispute boils down to whether Dr. Madsen should have been treated as an expert witness and permitted to provide opinions regarding L.S.'s placement based on her review of records in this case. Dr. Madsen serves as the direct clinical supervisor for Bethany Apa, L.S.'s therapist. (AR3955.) Dr. Madsen testified that she had never worked at a school and that her only interaction with L.S., up to that time, consisted of an introductory meeting and a single observation she made of him at school. (AR3596.) Indeed, during Dr. Madsen's direct examination regarding her introductory meeting with L.S., Plaintiffs' counsel indicated that "[w]e will have Miss Apa testify to the specifics of that observation." (AR3959-60.) During Dr. Madsen's direct examination, when asked about her belief as to the appropriateness of L.S.'s placement, Defendants' counsel objected on the basis of lack of personal knowledge and experience working with L.S. (AR3962-77.) As explained by Plaintiffs' counsel, her testimony would be "based upon her records review and the observation, the observation and her supervision of [Ms. Apa]." (AR3970.) The IHO and Defendants' counsel, however, were not aware that Plaintiffs had offered Dr. Madsen as an expert and Plaintiffs' counsel never tendered

her as one at the hearing.[3]  Nonetheless, Dr. Madsen was asked about her education and training, position and responsibilities, and work with students other than L.S., but Plaintiffs' counsel was unable to lay a proper foundation regarding Dr. Madsen's personal knowledge or experience working with L.S. at Memorial or a proper foundation regarding her understanding of PACE—the District's recommended placement program for L.S.  (*See* AR3953, 3955, 3958, 3968-69.) Dr. Madsen also had a lack of experience with L.S.'s emotional disorders, as her experience with emotional disorders was limited to the context of eating disorders, not the types of emotional and behavioral problems L.S. faces.  (AR3974.)  Plaintiffs' counsel ultimately agreed to have Ms. Apa testify to the educational placement for L.S., as the IHO indicated that she had the requisite personal experience and foundational knowledge to do so.  (AR3975-76.)

The Federal Rules of Evidence do not require an expert witness to have personal knowledge.  *See* Fed. R. Evid. 703 (an "expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed").  Determining the appropriateness of the IHO's evidentiary determination in this case is unnecessary, however, because the record already contains the testimony Plaintiffs seek (*see e.g.,* AR3966, 4010, 4008-4093) and Plaintiffs do not argue prejudice by the Court's reliance on that existing information.  Ms. Apa—Dr. Madsen's directly supervised intern who observed L.S.—was asked whether she believed L.S. would be successful at Memorial (AR4058-61, 4061-62 (Q: And so would you say, then, that you believe that he is successful now in Memorial Junior High School?

_____

[3] (*See e.g.,* AR3962-63 ("[District Counsel]: This witness was not stipulated to, nor has she been tendered as an expert.  I don't know what she would be an expert on within the school setting."); AR3968 ("[IHO]: So I really don't recall any indication that we are going to try to have this witness qualified as an expert"); AR3972-73 ("[IHO]: You are wanting her to give an expert opinion in this case on those matters, right?  [Pltfs' Counsel] Yes.  [IHO]:  Without her qualifying as an expert?   [Pltfs' Counsel]: Is it your position, … that she's not qualified as an expert?  [IHO]: Well, how can I take a position?  Have you offered, you know, and have we had a discussion about her areas of expertise to comment on placement …?"); AR3974 ("[IHO]: I am just trying to understand that without being qualified as an expert and I have had no indication that she was going to be offered as an expert …).)

A:  I think that he's definitely improved since the beginning of the year. . . . and that he's made

progress since then and can continue to make progress in his current environment").)  Indeed, at

the hearing, the IHO noted along with Plaintiffs' objection to excluding Dr. Madsen's opinion

testimony that other witnesses would address the issue:

> [Plaintiffs' counsel]:  I would just like to note for the record my objection to Dr.
> Madsen not being qualified as—not having the opportunity to qualify herself as
> an expert to testify regarding the—regarding her records review, her evaluation
> and opinion on the therapeutic placement, and his general behavior in school.  I
> would just like to note it for the record.

> [IHO]:  That's being noted for the record and is the fact that you are going to have
> a witness directly working with the student who is going to be able to testify on
> very important areas regarding the student, including the proposed placement.

(AR3976-77.)  To hear the same testimony from Dr. Madsen would be cumulative and

duplicative of testimony already elicited at the hearing.  To the extent an evidentiary error exists,

it is therefore harmless and Plaintiffs were not prejudiced by any exclusion.  *See e.g., Coffie v.*

*Korhonen*, No. 05 C 6745, 2008 WL 161673, at 11 (N.D. Ill. Jan 16, 2008) (finding exclusion of

expert testimony harmless where the expert's opinion was insufficiently supported and

cumulative of other evidence presented at the trial).  Because any testimony from Dr. Madsen

would be cumulative, the Court denies Plaintiffs' motion to supplement the administrative record

with testimony from Dr. Madsen regarding L.S.'s appropriate placement and behavior

interventions necessary for him to receive the FAPE required by the IDEA, including any

foundation necessary to support her qualification as an expert for these opinions.

**II.** **Plaintiffs Did Not Have An Opportunity to Respond to Evidence Regarding
Enforcement of PACE's Restraint Policy For Medically Contraindicated Students**

Plaintiffs seek to supplement the administrative record with evidence regarding PACE's

ability to provide a FAPE to L.S. and implement his IEP due to contradictory evidence submitted

by the District, after the hearing, that called into question previous testimony about PACE.  On

the last day of the hearing, Ms. Vanessa Williams, the principal for the PACE program—offered by the special education cooperative Exceptional Children Have Opportunities Joint Agreement (ECHO)—testified that a student who attends PACE must be able to be physically restrained. (AR4714 ("Q. Can a student attend PACE if he cannot be restrained? A. No.").) When Plaintiffs' counsel and the IHO asked Ms. Williams for confirmation regarding whether a student with a medical condition that does not allow restraint could attend PACE, Ms. Williams twice affirmed that such a student would not be able to attend PACE. (AR4732.) Because this information regarding restraint was learned on the last day of the hearing, L.S.'s mother requested that the IHO permit Dr. Jennifer Miller, L.S.'s endocrinologist at the Chicago Children's Diabetes Center, to submit an affidavit subsequent to the hearing. (AR630-636.) L.S. has type-1-diabetes and uses an insulin pump to manage his disease which means implementing the use of physical restraint puts him at risk for ketoacidosis, illness and hospitalization if the insulin tube becomes kinked or disconnected, or delivers insulin at the improper time due to restraint conditions. (AR630-32.) After Plaintiffs submitted Dr. Miller's affidavit, the District contradicted the testimony of its own witness, Ms. Williams, by submission of an affidavit from Dr. Margaret Longo, the Interim Executive Director of ECHO. (*See* AR780-81.) Dr. Longo's affidavit states that the ECHO Joint Agreement's policies and procedures regarding the use of isolated time and physical restraint as behavioral interventions indicates—consistent with state law—"that physical restraint may only be used when a student poses a physical risk to himself or others, *when there is no medical contraindication to its use*, and when staff have been trained in physical restraint." (AR780, ¶¶ 4, 5.) Dr. Longo further stated "[i]f physical restraint is medically contraindicated and the student poses a physical risk to himself or others, the ECHO or PACE behavioral team will consider alternative strategies to physical restraint, as described in

Section 6 of the Policy." (*Id.*, ¶ 6.) According to Dr. Longo, "[a] student will not be denied

enrollment in any ECHO program, including the PACE program, because physical restraint of

the student is medically contraindicated. Unlike many private day schools, ECHO programs,

including the PACE program, admit and successfully educate students for whom physical

restraint is medically contraindicated." (*Id.*, ¶ 7.)

Plaintiffs argue that Dr. Longo's affidavit demonstrates that Ms. Williams incorrectly

testified about the school's restraint policy and that contrary to her testimony, a student for

whom restraint was medically contraindicated, would not be denied enrollment at PACE. (*Id.*)

Plaintiffs' counsel had no opportunity to cross-examine witnesses or otherwise present rebuttal

evidence on the restraint policy as characterized by Dr. Longo and its impact on L.S.'s placement

at PACE. Plaintiffs seek to supplement the administrative record with independent evidence

about PACE's ability to provide L.S. with appropriate education from an independent expert,

such as Dr. Michael McCanna—previously hired by the District to evaluate and observe L.S.

during the prehearing proceedings.

The Court agrees with Plaintiffs that a need for additional evidence regarding the restraint

policy of PACE was not apparent until after the due process hearing, when the IHO allowed the

District to submit the affidavit of Dr. Longo as evidence directly contradicting the testimony

elicited at the hearing from Ms. Williams. Defendants argue that Plaintiffs' request is too

general and precludes the Court from accessing its importance. This is not the case. PACE's

policies and ability to accommodate students with type-1-diabetes is of critical relevance to the

question of whether PACE is an appropriate placement and the least restrictive environment for

L.S., and Plaintiffs should have an opportunity to respond to Dr. Longo's new testimony. Indeed,

the IHO relied on Dr. Longo's characterization of the PACE policy in finding PACE was the

Least Restrictive Environment for L.S.  (*See* AR797 ("Physical restraint is not an issue with respect to placement at PACE because PACE will not use such restraint when there is a medical contraindication to its use"); AR815 ("Physical restraint at PACE is not a concern, as contended by the Parent, because PACE will not use such restraint when there is medical contraindication to its use").)  Whether or not PACE's policies and implementation of those policies—or exceptions for implementation of those policies—align with L.S.'s medical needs is directly relevant to the independent determination the Court is required to make.  *See Ross*, 486 F.2d at 270 (citing *Rowley,* 458 U.S. at 206) (explaining that the district court is "to make an independent decision based on the preponderance of the evidence," while at the same time, giving "'due weight' to the determinations made during the state administrative process").

　　　Plaintiffs' specific request, however, is too broad.  Plaintiffs ask the Court to permit them to provide expert testimony documentation from an independent expert, such as Dr. Michael McCanna, limited to PACE's ability to provide L.S. with a FAPE and implement his IEP. Plaintiffs knew that PACE's policies and ability to provide L.S. with a FAPE and implement his IEP was an issue to be addressed at the hearing, at which Dr. McCanna testified.  The issue before the Court at this stage of the appeal is whether the IHO's consideration of Dr. Longo's affidavit—submitted after the eve of the due process hearing and without opportunity for response—caused Plaintiffs' prejudice.  The Court finds that Plaintiffs' were denied an opportunity to respond to the limited evidence provided by Dr. Longo.  As such, the Court grants Plaintiffs' request to present testimony via affidavit, limited to the context of a response to Dr. Longo's affidavit regarding the PACE policies and ability to accommodate students for which restraint is medically contraindicated, like L.S.  *See e.g., B.J. v. Homewood Flossmoor CHSD No. 233*, No. 13 C 2585, 2013 WL 4659689, at *6 (N.D. Ill. Aug. 30, 2013) (permitting the plaintiff

an opportunity to respond to the District's submission with testimony from medical staff and personnel at the recommended placement facility regarding therapy specific training and their experience treating children with specific conditions).

### III. Plaintiff L.S.'s Post-Hearing Grades, Academic and Behavioral Reports, and Student Records are Relevant to the Court's Independent Determination of Whether Appropriate Placement Determinations Were Made For Implementation of the October 2013 IEP

As of March of 2015, L.S. is attending Memorial as his stay-put educational placement during the pendency of the administrative review pursuant to the injunctive relief granted to Plaintiffs on January 23, 2015. (*See* R.21.) The District convened IEP meetings on February 20 and 27, 2015 and March 17, 2015 in order to conduct an annual review in compliance with state and federal laws. The IEP team, including L.S.'s mother, developed a new IEP for L.S. that documents his present level of performance and the District's proposal to provide L.S. with a FAPE. According to Plaintiffs, L.S. has shown progress on the IEP goals implemented by the District at Memorial. Plaintiffs move to supplement the administrative record with evidence of L.S.'s academic, medical, and social-emotional development since the hearing. Defendants argue that evidence created in 2015 is not relevant to a review of the administrative record focused on whether Defendants appropriately implemented L.S.'s October 2013 IEP. Furthermore, Defendants assert that any allowance for Plaintiffs to supplement the record in this regard is prejudicial as it creates a trial *de novo* and permits Plaintiffs to redo the hearing.

Evidence related to a student's progress from the time of the hearing to the time of trial is the type of evidence contemplated by the *Burlington* court as proper "additional evidence" under 20 U.S.C. § 1415. *See Burlington*, 736 F.2d at 791 (explaining that there is value in "bringing the court up to date on the child's progress from the time of the hearing to the trial"). The progress that L.S. has made since the due process hearing is relevant to the Court's review of the

IHO's determination.  L.S. has been enrolled at Memorial since January of 2015.  His placement at Memorial, due to the stay-put provision, and his progress at that location is directly relevant to review of the IHO's determination of whether PACE or Memorial is the appropriate placement for L.S. under the October 2013 IEP.  Plaintiffs' request to supplement the administrative record with L.S.'s current grades, IEP progress reports, behavior reports, Check-in, Check-Out logs, Behavior Intervention Plan data, and other school student records which detail L.S.'s current level of academic and behavioral functioning, goals, and progress is, therefore, granted.  *See Jaccari J. v. Bd. of Educ. of City of Chicago, Dist. No. 299*, 690 F.Supp.2d 687, 695 (N.D. Ill. 2010) (referencing grant of Plaintiffs' order to produce certain school records and supplementation of the administrative record with the same); *Hernandez v. Bd. of Educ. of City of Chicago*, No. 01 C 297, 2001 WL 477222, at *5 (N.D. Ill. May 7, 2001) (granting supplementation of the administrative record with current medical and psychological condition, as well as evidence of the continuing, post-Administrative Order impact of the School Board's alleged failure to provide J.V. H. with the necessary range of services, reasoning that the information would aid the court in making the independent determination of the School Board's compliance with the IDEA); *Tammy S. v. Reedsburn Sch. Dist.*, 302 F.Supp.2d 959, 963 (W.D. Wis. 2003) (supplementing the administrative record with expert report from student's neurosurgeon "because it contains relevant information on developments in [the student's] medical situation since the administrative hearing"); *Peter G. v. Chicago Public Sch. Dist. No. 299 Bd. of Educ.*, 02 C 0687, 2002 WL 31049838, at *1 (N.D. Ill. Sept. 13, 2002) (limiting the plaintiff's supplemental discovery requests to align with the court's intent of its order which "was simply to allow plaintiff discovery and introduce a limited amount of supplemental evidence relevant to [the student's] progress since the date of the administrative hearing that

would aid the court in its IDEA determination"); *see also Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 760 (3d Cir. 1995) ("Children are not static beings; neither their academic progress nor their disabilities wait for the resolution of legal conflicts").

This ruling does not mean, however, that Plaintiffs are granted carte blanche supplementation of the record regarding L.S.'s academic, medical and social-emotional development or a chance to recreate or embellish testimony already in the record. Plaintiffs' requests to supplement the record with a summary report and expert testimony from Plaintiffs' own witness—Dr. Madsen—and with the information related to L.S.'s current March 2015 IEP are denied. Specifically, Plaintiffs propose supplementation of the record with documentation, including a summary report, and expert testimony from Dr. Madsen limited to L.S.'s social-emotional development since the due process hearing. Plaintiffs' proposal walks too close to the line of recreation or embellishment of the due process hearing and prior testimony elicited (or excluded) from the same witness from whom the IHO excluded opinion testimony regarding L.S's placement. *See Burlington*, 736 F.2d at 790 (interpreting "additional evidence" in 20 U.S.C. § 1415 to "not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony; this would be entirely inconsistent with the usual meaning of 'additional'"). The Court will, therefore, consider the more objective evidence of school records and reports relevant to L.S.'s academic, medical and social-emotional development since the hearing, but will not allow Dr. Madsen's testimony relating to the same.

In addition, Plaintiffs' request to supplement the administrative record with L.S.'s updated IEP is denied. Information regarding L.S.'s updated 2015 IEP—against which Plaintiffs' prepared a "letter of dissent"—is not appropriate for the Court to consider as it would turn the Court's review of the IHO's determination specific to the October 2013 IEP into a trial *de novo*.

*See Burlington*, 736 F.2d at 791; *Patricia P.,* 203 F.3d at 470.  Indeed, as Defendants note, it is the October 2013 IEP in dispute that is currently being implemented for L.S. during his stay-put placement at Memorial.  (*See* R.62, at 5, n.1.)  The updated 2015 IEP—too which the parties have neither agreed to nor implemented for L.S.—is, therefore, of questionable relevance. Plaintiffs' requests to supplement the record with (1) L.S.'s current IEP completed on March 17, 2015, including Plaintiffs' Letter of Dissent, which details his current level of functioning and the District's proposal to provide L.S. with a free appropriate public education and (2) testimony from Ms. Mirich, L.S.'s current primary special education teacher, and Ms. Newton, L.S.'s current and former general education teacher, who both participated in developing L.S.'s current IEP are denied.

## CONCLUSION

For the reasons discussed in detail above, the Court grants in part and denies in part Plaintiffs' motion to supplement the administrative record and allow additional evidence.


**DATED:**      **June 11, 2015**                    ENTERED

_____

AMY J. ST. EVE
United States District Court Judge